PHILLIP A. TALBERT
United States Attorney
JOSEPH D. BARTON
HENRY Z. CARBAJAL III
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile:  (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>IRMA OLGUIN, JR.,<br><br>　　　　　Defendant. | CASE NO.  1:24-cr-00159-NODJ-BAM<br><br>PLEA AGREEMENT |

## I.    INTRODUCTION

### A.    Scope of Agreement.

The Information in this case charges the defendant, Irma Olguin, Jr., with one count of conspiring to commit wire fraud and one count of wire fraud in violation of 18 U.S.C. §§ 1349 and 1343, respectively.  This document contains the complete Plea Agreement between the United States Attorney's Office for the Eastern District of California and the defendant regarding this case.  This Plea Agreement is limited to the United States Attorney's Office for the Eastern District of California (hereinafter, the "government") and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

1

**B.**     <u>Court Not a Party.</u>

The Court is not a party to this Plea Agreement.  Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of the defendant.  This includes activities that may not have been charged in the Information.  The Court is under no obligation to accept any recommendations made by the parties, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this Plea Agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea and she will remain bound to fulfill all of the obligations under this Plea Agreement.  The defendant agrees the prosecutor, defense counsel, and the Court cannot make a binding prediction or promise regarding the sentence she receives.

## II.     <u>DEFENDANT'S OBLIGATIONS</u>

**A.**     <u>Guilty Plea.</u>

The defendant will plead guilty to one count of conspiring to commit wire fraud and one count of wire fraud in violation of 18 U.S.C. §§ 1349 and 1343, respectively.  The defendant agrees that she is in fact guilty of these crimes and that the facts set forth in the Factual Basis for Plea attached as Exhibit A are accurate.

The defendant agrees that this Plea Agreement will be filed with the Court and become a part of the record in this case.  The defendant agrees that she will not be allowed to withdraw her guilty plea should the Court not follow the parties' sentencing recommendations.

The defendant agrees that the statements made by her in signing this Plea Agreement, including the factual admissions set forth in the Factual Basis for Plea, shall be admissible and useable against the defendant by the government in any subsequent criminal or civil proceedings even if the defendant fails to enter a guilty plea pursuant to this Plea Agreement.  The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 to the extent that these rules are inconsistent with this paragraph or with this Plea Agreement generally.

The defendant agrees that, under the United States Constitution, she is entitled to be indicted by a grand jury on the charges to which she is pleading guilty.  Pursuant to Fed. R. Crim. P. 7(b), she also

agrees to waive all rights she has to being prosecuted by Indictment to the charges in the Information. She will sign a waiver of prosecution by Indictment and consent to proceed by Information.

The defendant agrees that this Plea Agreement is a package offer, which means the offer is conditioned on her co-defendant, Jake Soberal, pleading guilty according to the terms of his plea offer. The defendant also agrees that, if her co-defendant declines, refuses, or otherwise fails to plead guilty according to the terms of his plea offer, then, at the option of the government, the defendant will not be allowed to accept this Plea Agreement and enter a guilty plea pursuant to it. Finally, the defendant agrees that, if her co-defendant declines, refuses, or otherwise fails to enter his plea according to the terms of his plea offer and the defendant has already entered his plea, this Plea Agreement is voidable at the option of the government. The government will then have the ability, in its sole discretion, to withdraw from this Plea Agreement and pursue all possible charges against the defendant. The defendant's waiver of rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, as stated in Section II.A, will not operate in this scenario.

Recognizing that this is a package offer, the defendant agrees that she has not been threatened, pressured, or coerced by anyone, including her co-defendant, to enter into this Plea Agreement. The defendant also agrees that she is entering into this Plea Agreement voluntarily because she is guilty of the offenses to which she is pleading.

**B.    Restitution.**

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. Defendant agrees that her misconduct is governed by the Mandatory Victim Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and that she will pay the full amount of restitution to all victims affected by her offenses. This includes the victims covered in the Factual Basis for Plea as well as other victims of the defendant's misconduct for the offenses charged for the period January 2022 through May 2023. The amount of restitution will not exceed $115,000,000.

The defendant will not sell, encumber, transfer, convey, or otherwise dispose of any of her assets without the prior written consent of the United States Attorney, except that the defendant may sell, transfer, or convey personal property, including used vehicles and personal items, but not financial instruments or ownership interests in business entities, with an aggregate value of less than $5,000, until

3

1  her restitution is satisfied.

2       The defendant agrees that all criminal monetary penalties imposed by the Court, including her

3  restitution, will be due in full immediately at the time of sentencing and subject to immediate

4  enforcement by the government.  The defendant also agrees that any payment schedule or plan set by the

5  Court for the remainder of her restitution is merely a minimum and does not foreclose the government

6  from collecting the remainder at any time through all available means.  The government will provide

7  payment instructions to the defendant.

8       The defendant agrees that she will not seek to discharge any restitution obligation in a

9  bankruptcy proceeding.  The defendant also agrees that this Plea Agreement will be violated and

10  voidable at the option of the government if she fails to pay restitution as agreed.

11      **C.**    **Fine.**

12       The defendant reserves the right to argue to the Probation Office and Court at sentencing that she

13  is unable to pay a fine, and that no fine should be imposed.  The defendant understands that it is her

14  burden to affirmatively prove she is unable to pay a fine, and she agrees to provide a financial statement

15  under penalty of perjury to the probation officer and the government in advance of the issuance of the

16  draft Presentence Investigation Report along with supporting documentation.  The government retains

17  the right to oppose the waiver of a fine.  If the Court imposes a fine, the defendant agrees to pay such

18  fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offenses.

19      **D.**    **Special Assessment.**

20       The defendant agrees to pay a special assessment of $200 at the time of sentencing by delivering

21  a check or money order, payable to the United States District Court, to the United States Probation

22  Office before the sentencing hearing.  She also agrees that this Plea Agreement is voidable at the option

23  of the government if she fails to pay the assessment prior to that hearing.

24      **E.**    **Violation of Plea Agreement and Withdrawal of Plea.**

25       If the defendant violates this Plea Agreement in any way, withdraws her plea, or tries to

26  withdraw her plea, this Plea Agreement is voidable at the option of the government.  If the government

27  voids the Plea Agreement based on the defendant's violation, the government will no longer be bound

28  by its representations to the defendant concerning the limits on criminal prosecution and sentencing as

set forth herein.  A defendant violates a Plea Agreement by committing any crime, or providing or procuring any statement or testimony that is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engaging in any post-plea misconduct constituting obstruction of justice.  Except as otherwise permitted in this Plea Agreement, varying from stipulated United States Sentencing Guidelines ("USSG") application or agreements, personally or through counsel, also constitutes a violation of the agreement.  The government will have the right to prosecute the defendant on the counts to which she pleaded guilty and file any new charges that would otherwise be barred by this Plea Agreement.  The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge.  The decision to pursue any or all of these options is solely in the discretion of the government.

By signing this Plea Agreement, the defendant agrees to waive any objections, motions, and defenses that she may have to the government's decision.  Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this Plea Agreement may be commenced in accordance with this paragraph notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of any such prosecutions.  The defendant also agrees not to raise any objections based on the passage of time with respect to such counts including any statutes of limitation or the Speedy Trial Act or Speedy Trial Clause of the Sixth Amendment.  The determination whether the defendant violated the Plea Agreement will be by a probable cause standard.

In addition, all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this Plea Agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant.  The defendant shall assert no claim under the United States Constitution, any statute, Fed. R. Crim. P. 11(f), Fed. Rule Evid. 410, or any other federal rule that statements made by her before or after this Plea Agreement, or any leads derived therefrom, should be suppressed.  By signing this Plea Agreement, the defendant waives any and all rights in the foregoing respects.

**F.**     **Forfeiture**

The defendant agrees to forfeit voluntarily and immediately all of her right, title, and interest to

any and all assets subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). Those assets include all property, real and personal, which constitutes or is derived from proceeds traceable to such violations.

The defendant voluntarily stipulates and agrees that as part of her sentence the Court may, pursuant to Fed. R. Crim. P. 32.2(b), order a forfeiture money judgment in an amount up to $115,000,000, less any previously forfeited funds.

The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated. The defendant agrees to waive her right to notice of any forfeiture proceeding involving this property, and agrees to not file a claim, or assist others in filing a claim, in that forfeiture proceeding.

The defendant knowingly and voluntarily waives her right to a jury trial on the forfeiture of assets. The defendant knowingly and voluntarily waives all constitutional, legal, and equitable defenses to the forfeiture of these assets in any proceeding. The defendant agrees to waive any jeopardy defense, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States, the State of California, or their subdivisions.

The defendant waives oral pronouncement of forfeiture at the time of sentencing and any defenses or defects that may pertain to the forfeiture.

**G.   Asset Disclosure.**

The defendant agrees to make a full and complete disclosure of her assets and financial condition, and will complete the government's "Authorization to Release Information" and "Financial Disclosure Statement" within three weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if she fails to complete truthfully and provide the described documentation to the government within the allotted time, she will be considered in violation of the Plea Agreement, and the government shall be entitled to the remedies set forth in section II.E above.

The defendant expressly authorizes the government to obtain a credit report to evaluate her ability to satisfy any monetary penalty imposed by the Court. The defendant also authorizes the

government to inspect and copy all information held by the Probation Office.

### III.   GOVERNMENT'S OBLIGATIONS

**A.   Other Charges.**

The government agrees not to bring any other charges arising from the misconduct outlined in the Factual Basis for Plea except if this Plea Agreement is voided or as provided in paragraphs II.E (Violation of Plea Agreement and Withdrawal of Plea), VI.B (Stipulated USSG Calculations), and VII.B (Waiver of Appeal and Collateral Attack).

**B.   Recommendations.**

1.   Incarceration Range.

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range as determined by the Court.

2.   Acceptance of Responsibility

The government will recommend a two-level reduction if the offense level is less than 16, or a three-level reduction if the offense level reaches 16, in the computation of the defendant's offense level if she demonstrates acceptance of responsibility for her misconduct as defined in USSG § 3E1.1.  This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in misconduct that constitutes obstruction of justice within the meaning of USSG § 3C1.1 either in the preparation of the pre-sentence report or during the sentencing proceeding.

**C.   Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation Office, including answering any inquiries and rebutting any inaccurate statements or arguments by the defendant, her attorney, the Probation Office, or the Court.  The defendant agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

### IV.   ELEMENTS OF THE OFFENSES

At a trial, the government would have to prove beyond a reasonable doubt the following elements to convict the defendant of conspiring to commit wire fraud and wire fraud in violation of 18

U.S.C. §§ 1349 and 1343, respectively:

1. Conspiracy to commit wire fraud

    a) There was an agreement between two or more persons to commit wire fraud;

    b) The defendant became a member of the conspiracy knowing at least one of its objects and intending to help accomplish it.

2. Wire Fraud:

    a) The defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

    b) Statements made as part of the scheme or plan to defraud were material, that is, the statements had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

    c) The defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

    d) The defendant used, or caused to be used, an interstate wire communication to carry out, or attempt to carry out, an essential part of the scheme or plan.

The defendant fully understands the nature and elements of the crimes charged in the Information to which she is pleading guilty, together with the possible defenses thereto, and has discussed them with her attorney.

### V.  MAXIMUM SENTENCE

**A.    Maximum Penalty.**

The maximum sentence that the Court can impose for conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 is twenty years of incarceration, a fine of $250,000, three years of supervised release, and a special assessment of $100. The maximum sentence that the Court can impose for committing wire fraud in violation of 18 U.S.C. § 1343 is twenty years of incarceration, a fine of $250,000, three years of supervised release, and a special assessment of $100. By signing this Plea Agreement, the defendant agrees that the Court can order the payment of restitution for the full loss caused by the defendant's misconduct. The defendant also agrees that the restitution order is not

8

1    restricted to the amounts alleged in the specific counts to which she is pleading guilty.

2         **B.**    **Supervised Release Violations.**

3         The defendant agrees that if she violates a condition of supervised release at any time during the

4    term of supervised release, the Court may revoke the term of supervised release and require her to serve

5    up to two additional years of imprisonment.

6               **VI.**     **SENTENCING DETERMINATION**

7         **A.**    **Statutory Authority.**

8         The defendant agrees that the Court must consult the USSG and determine a non-binding and

9    advisory sentencing range for this case, and consider these factors when determining a final sentence.

10   The defendant further agrees that the Court will consider whether there is a basis for departure from the

11   sentencing range, either above or below the sentencing range, because there exists an aggravating or

12   mitigating circumstance of a kind, or to a degree, not adequately taken into consideration in formulating

13   the USSG.  Finally, the defendant agrees that the Court, after consultation and consideration of the

14   USSG, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

15        **B.**    **Stipulated USSG Calculations.**

16        The parties agree that there is no material dispute as to the following USSG variables and

17   therefore stipulate to the following:

18           1.     Base Offense Level: 7.

19           2.     Loss Amount: +24 for loss over $65,000,000 but under $125,000,000 pursuant to

20                 U.S.S.G. § 2B1.1(b)(1)(M).

21   ///

22   ///

23   ///

24

25

26

27

28

3.   Victim-related and Role in the Offense Adjustments:

     a)   $1,000,000 in gross receipts derived from financial institutions: +2, pursuant to U.S.S.G. § 2B1.1(b)(17)(A).

     b)   Ten or More Victims: +2 pursuant to U.S.S.G. § 2B1.1(b)(2)(A).

     c)   Sophisticated Means: +2 pursuant to U.S.S.G. § 2B1.1(b)(11)(C).

     d)   Abuse of Position of Trust: +2 pursuant to U.S.S.G. § 3B1.3.

4.   Adjusted Offense Level: 39

5.   Acceptance of responsibility: See paragraph III.B.2, above

6.   Criminal History: The parties estimate, but do not stipulate, that the defendant's criminal history category will be I.  If the defendant qualifies as a zero-point offender pursuant to USSG § 4C1.1, the parties agree the defendant would receive an additional decrease of two offense levels from her adjusted offense level.

7.   Sentencing Range: 151-188 months if the defendant is a zero-point offender pursuant to USSG § 4C1.1.  The defendant understands that if her criminal history category differs from the parties' estimate, her sentencing range may differ from that set forth here.

8.   Departures or Other Enhancements or Reductions:

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments other than the decrease for "Acceptance of Responsibility," or cross-references.  The parties also agree not to move for, or argue in support of, any other departures from the USSG except that the government may move for a departure or adjustment based on defendant's post-plea obstruction of justice.

9.   Parties' Sentencing Recommendations:

The government will recommend that the defendant be sentenced to a term of imprisonment up to the low-end of the applicable guideline range as determined by the Court, three years of supervised release, and full restitution.  The defendant is free to recommend to the Court whatever sentence she believes is appropriate under 18 U.S.C. § 3553(a), but not less than 60 months in prison.

## VII.    WAIVERS

### A.    Waiver of Constitutional Rights.

The defendant agrees that by pleading guilty she is waiving the following constitutional rights: (1) to plead not guilty and to persist in that plea if already made, (2) to be tried by a jury, (3) to be assisted at trial by an attorney, who would be appointed if necessary, (4) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed, (5) to subpoena witnesses to testify on her behalf, (6) to confront and cross-examine witnesses against her, and (7) not to be compelled to incriminate herself.

### B.    Waiver of Appeal and Collateral Attack.

The defendant agrees that the law gives her a right to appeal her guilty plea, conviction, and sentence.  The defendant also agrees as part of her plea, however, to give up the right to appeal the guilty plea, conviction, and sentence imposed in this case as long as the sentence does not exceed the statutory maximum for the offenses to which she is pleading guilty.  Finally, the defendant agrees that this waiver includes, but is not limited to, any and all constitutional and legal challenges to her conviction and guilty plea, including arguments that the statutes to which she is pleading guilty are unconstitutional, and any and all claims that the Factual Basis for Plea is insufficient to support her guilty plea.  The defendant gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if the sentence imposed by the Court exceeds the statutory maximum or the government appeals the sentence in the case.  The defendant agrees that these circumstances occur infrequently and that in almost all cases this Plea Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, she also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. §§ 2255 or 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate her plea, dismiss the underlying charges, or modify or set aside her sentence on the counts to which she is pleading guilty, the government shall have the rights set forth in Section II.E.

11

**C.**     **Waiver of Attorneys' Fees and Costs.**

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations.

**D.**     **Impact of Plea on Defendant's Immigration Status.**

The defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses to which the defendant is pleading guilty. The defendant and her counsel have discussed the fact that the charges to which the defendant is pleading guilty are aggravated felonies, or crimes that are likely to be determined to be aggravated felonies under 8 U.S.C. § 1101(a)(43), and that while there may be arguments the defendant can raise in immigration proceedings to avoid or delay removal, it is virtually certain she will be removed. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including her attorney or the Court, can predict to a certainty the effect of her convictions on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is her automatic removal from the United States.

## VIII.     ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the parties exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to in writing and signed by the parties.

///

///

///

## IX.    APPROVALS AND SIGNATURES

### A.    Defense Counsel:

I have read this Plea Agreement and have discussed it fully with my client.  The Plea Agreement accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to plead guilty as set forth in this Plea Agreement.

Dated:

_____
DANIEL OLMOS
Attorney for Irma Olguin, Jr.

### B.    Defendant:

I have read this Plea Agreement and carefully reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.  I have consulted with my attorney and fully understand my rights with respect to the provisions of the USSG that may apply to my case.  No other promises or inducements have been made to me, other than those contained in this Plea Agreement.  No one has threatened or forced me to enter into this Plea Agreement, and I am satisfied with the representation of my attorney in this case.

Dated:

_____
IRMA OLGUIN, JR
Defendant

### C.    Attorney for United States:

I accept and agree to this Plea Agreement on behalf of the government.

Dated:                                          PHILLIP A. TALBERT
                                                      United States Attorney

_____
JOSEPH BARTON
HENRY CARBAJAL III
Assistant United States Attorneys

13

**EXHIBIT A**

**FACTUAL BASIS FOR PLEA**

As to the conspiracy charge, beginning on a date unknown, but not later than 2022, and continuing through May 2023, in Fresno County, State and Eastern District of California, and elsewhere, Jake Soberal and Irma Olguin, Jr. did knowingly conspire, combine, and confederate with each other to cause writings, signs, signals, pictures, and sounds to be transmitted by means of wire and radio communications in interstate commerce, in furtherance of a material scheme and artifice to defraud Bitwise Industries' ("Bitwise")[1] investors and lenders, among others, and to obtain money and property from them.  Olguin, Jr. knew the unlawful purpose of her plan with Soberal, willfully joined in the plan, and acted with intent to accomplish it.

Specifically, at all relevant times, Soberal and Olguin, Jr. were the co-Chief Executive Officers of Bitwise, which was a technology company headquartered in Fresno County, State and Eastern District of California.  Bitwise also operated in Kern and Alameda Counties, California, and elsewhere.

Beginning in 2022, and continuing through May 2023, in Fresno County and elsewhere, Olguin, Jr. agreed with Soberal to make false and fraudulent representations about Bitwise's finances to the company's investors and lenders, among others, to obtain on behalf of Bitwise millions of dollars in investments and loans from these individuals and financial institutions.  More than ten different individuals and financial institutions suffered significant financial losses because of Soberal and Olguin, Jr.'s misconduct.

Soberal and Olguin, Jr. agreed to alter, fabricate, and falsely and fraudulently represent financial information for Bitwise that was presented to investors and lenders, among others, to deceive and cheat them into making millions of dollars in loans and investments to the company.  The alterations and fabrications inflated Bitwise's revenues and cash balances, among other financial markers, and were especially complex in that the alterations and fabrications tricked sophisticated individuals and financial institutions with extensive experience in financial markets into believing the company was excelling

---

[1] Bitwise had a parent company and several other related companies.  The companies were all controlled by Soberal, Olguin, Jr., and a board of directors.  Therefore, the companies are being referred to generally, and collectively, as Bitwise for purposes of this Plea Agreement.

when the company was instead failing.  Based in part on Soberal and Olguin, Jr.'s false and fraudulent representations, Bitwise received approximately $115,000,000 in investments and loans, some of which were not repaid because the company collapsed and went out of business in late May 2023.  Many of the investments and loans that Bitwise received were made by interstate wire transfers sent from outside California and deposited into the company's bank accounts opened in Fresno County, State and Eastern District of California.

All of the money that Bitwise received through Soberal and Olguin, Jr.'s misconduct went towards paying the company's payroll, outfitting office spaces, repaying debts owed to prior investors and lenders, and expenses incurred in the company's ordinary course of business.  At all relevant times, Olguin, Jr. acted with the intent to defraud.  This was in violation of 18 U.S.C. § 1349.

As to the wire fraud charge, beginning on a date unknown, but not later than 2022, and continuing through May 2023, in Fresno County, State and Eastern District of California, and elsewhere, Soberal and Olguin, Jr. knowingly devised, intended to devise, participated in, and executed a material scheme and artifice to defraud Bitwise's investors and lenders, among others, and to obtain money and property from them, by materially false and fraudulent pretenses, representations, and promises.

Specifically, on or about September 1, 2022, in Fresno County, State and Eastern District of California, and elsewhere, Soberal and Olguin, Jr., for the purpose of executing their scheme and plan to defraud, knowingly transmitted, and caused to be transmitted, by means of wire and radio communication in interstate commerce, the following writings, signs, signals, pictures, and sounds:

> Wire transfer of money from a New York-based financial institution in the amount of $18,499,999.50, which was routed through a computer in Delaware and deposited into Bitwise's bank account ending -738 opened in Fresno County, State and Eastern District of California.

At all relevant times, Olguin, Jr. acted with intent to defraud.  This was in violation of 18 U.S.C. § 1343.

Dated:

IRMA OLGUIN, JR.
Defendant

A-2